**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **CANDICE BURNETT,** *individually and on behalf of all others similarly situated*, | § | Civil Action No.: 4:21-cv-03176 |
| | § | |
| *Plaintiff,* | § | |
| v. | § | Hon. Keith P. Ellison |
| | § | |
| | § | |
| **CALLCORE MEDIA, INC.,** | § | |
| | § | |
| *Defendant.* | § | |

---

**PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS SETTLEMENT**

Christopher E. Roberts (SDTX #3708019)
Butsch Roberts & Associates LLC
7777 Bonhomme Avenue, Suite 1300
Clayton, Missouri 63105
Phone: (314) 863-5700
Fax: (314) 863-5711
E-mail: croberts@butschroberts.com

Jacob U. Ginsburg, Esq. (SDTX# 3568914)
Kimmel & Silverman, P.C.
30 East Butler Ave.
Ambler, Pennsylvania 19002
Phone: (267) 468-5374
Facsimile: (877) 788-2864
Email: jginsburg@creditlaw.com
teamkimmel@creditlaw.
*Attorneys for Plaintiff, Candice Burnett*

Dated: January 26, 2024

## TABLE OF CONTENTS

I.    STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING…...…..……..…1

II.   STATEMENT OF THE ISSUES TO BE RULED UPON BY THE COURT AND
      STANDARD OF REVIEW……………………………………………..…………….…..3

III.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY……...……………..……...3

      A.  CallCore's lead generation relationship with PHBC...…….………..……………….3

      B.  CallCore's telemarketing contract with Yodel…………………..….….…………….4

      C.  Candice Burnett receives calls from CallCore and files suit.…………………………5

      D.  The proposed Settlement Classes……………………………………………….…...6

      E.  Class Notice and Claims Administration……………………….….…………………7

IV.   SUMMARY OF THE ARGUMENT……………………………………,,.………………8

V.    ARGUMENT…………………………………………………………..……….9

      A.  This Court Should Certify the Class for Settlement Purposes………….……..…………9

          1.  The class meets the numerosity requirement of Rule 23(a)(1)……...……………10

          2.  The classes meet the commonality requirement of Rule 23(a)(2)
              and the preponderance requirement of Rule 23(b)(3)………………....…………10

          3.  Plaintiff satisfies the typicality requirement of Rule 23(a)(3)…………..…….…….13

          4.  Plaintiff and her counsel satisfy the adequacy requirement of Rule 23(a)(4)…..……14

      B.  This Settlement Should Be Preliminarily Approved………………………..……….15

          1.  There was no fraud or collusion in this arms-length settlement……..……..………16

          2.  The complexity, expense and potential duration of litigation favor
              approval of the settlement…….……………………………………..…………17

          3.  The stage of litigation and available discovery favor approval of the settlement…...18

          4.  The probability of success on the merits favor approval……………..…….………19

5.   The range of recovery and certainty of damages favor approval…..………..………20

6.   The Settlement is endorsed by the class representative and class counsel…….……20

C.   Plaintiff will request attorneys' fees, costs and a class representative service award that are fair and reasonable……………………………………………..……...21

D.   The Court should approve the class notice and administration plan…………..………..23

VI.    CONCLUSION…………………………………………………………………………24

## **TABLE OF AUTHORITIES**

**Cases**

.

*All. for Fair Bd. Recruitment v. SEC*, 85 F.4th 226 (5th Cir. 2023)……………………………19

*Al's Pals Pet Care v. Woodforest Nat'l Bank*, 2019 WL 387409 (S.D. Tex. Jan. 30, 2019)…......21

*Amchem Prods., Inc. v. Windsor,* 521 U.S. 591 (1997)……………………………………………12

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds,* 568 U.S. 455 (2013)………………………12

*Ayers v. Thompson*, 358 F.3d 356 (5th Cir. 2004)…………………………………………………17

*Boger v. Citrix Sys., Inc.*, 2023 WL 3763974 (D. Md. June 1, 2023)…………..……………17,21

*Blackmon v. Zachary Holdings, Inc.*,

      2022 WL 3142362 2022 U.S. Dist. LEXIS 139417 (W.D. Tex. Aug. 5, 2022)…………21

*Bowman v. Art Van Furniture, Inc*., 2018 WL 6444514 (E.D. Mich. Dec. 10, 2018)…………..17

*Braver v. Northstar Alarm Servs., LLC*, 329 F.R.D. 320 (W.D. Okla. 2018)……….….…….11

*Campton v. Ignite Restaurant Group, Inc.*,

      2015 U.S. Dist. LEXIS 182828, 2015 WL 12766537 (S.D. Tex. June 5, 2015)…….….21

*Charvat v. Valente*,

      2019 WL 55769322019 U.S. Dist. LEXIS 187225 (N.D. Ill. Oct. 28, 2019)…..……..…23

*Consumers' Rsch. v. FCC*, 63 F.4th 441 (5th Cir. 2023)………………………………………..19

*Cole v. Collier*, No. 4:14-cv-1698,

      2018 WL 2766028 2018 U.S. Dist. LEXIS 97110 (S.D. Tex. 2018)…..…..…………18-21

*DeHoyos v. Allstate Corp*., 240 F.R.D. 269, 292 (W.D. Tex. 2007)……………….…………21

*Frost v. Oil States Energy Servs., L.L.C.*,

      2015 U.S. Dist. LEXIS 183104, 2015 WL 12780763 (S.D. Tex. Nov. 19, 2015)………21

*Gene And Gene LLC v. BioPay LLC,* 541 F.3d at 318 (5th Cir. 2008)…………….…....…12,13

*Gergetz v. Telenav, Inc*., 2018 WL 4691169 (N.D. Cal. Sep. 27, 2018)…………………….…..22

*Hand v. Beach Entm't KC, LLC*, 456 F. Supp. 3d 1099 (W.D. Mo. 2020)…………..…………..11

*Head v. Citibank,* 340 F.R.D. 145 (D. Ariz. 2022)……………………………………...…………11

*Hordge v. First Nat'l Collection Bureau, Inc.*,

       Case No. 4:15-CV-1695, 2018 U.S. Dist. LEXIS 218823 (S.D. Tex. July 5, 2018)……13

*In re: Benefytt Tech. Inc., et al,* at 4:23-bk-90566 (Bankr. S.D. Tex. 2023)……………………19

*In re Capital One Tel. Consumer Prot. Act Litig*., 80 F. Supp. 3d 781 (N.D. Ill. 2015)………..17

*In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014)…………………………..………………11

*In re Heartland Payment Sys.*, 851 F. Supp. 2d 1040 (S.D. Tex. 2012)……………...…..….11,18

*In re: Hi. Q, Inc.* 1:23-bk-11361 (Bankr. Del. 2023)………………………………………………19

*In re Lease Oil Antitrust Litig.*, 186 F.R.D. 403, 449 (S.D. Tex. 1999)…………………………22

*Jallo v. Resurgent Capital Servs., L.P.*,

       2016 WL 6610322, 2016 U.S. Dist. LEXIS 192270 (E.D. Tex. Nov. 8, 2016)……..…..23

*James v. City of Dallas,* 254 F.3d 551 571 (5th Cir. 2001)……..……………………………..13

*Jenkins v. Raymark Indus., Inc.,* 782 F.2d 468 (5th Cir. 1986)……………..….…..…………..12

*Johansen v. One Planet Ops, Inc*., 2020 WL 7062806 (S.D. Ohio Mar. 25, 2020)…………….23

*Keating v. Peterson's Nelnet, LLC*, 615 Fed. App'x. 365 (6th Cir. 2015)…………………………19

*Kimble v. First Am. Home Warranty Corp.*,

       2024 WL 220369 2024 U.S. Dist. LEXIS 9741 (E.D. Mich. Jan. 19, 2024)……………12

*Kolinek v. Walgreen Co*., 311 F.R.D. 483 (N.D. Ill. 2015)……………………..………………..22

*Krakauer v. Dish Network, L.L.C*., 925 F.3d 643 (4th Cir. 2019)…………….…………...18,19

*Lee v. Metrocare Servs.*, 2015 U.S. Dist. LEXIS 194001 (N.D. Tex. July 1, 2015)…………….22

*Markos v. Wells Fargo Bank, N.A.*, 2017 WL 416425 (N.D. Ga. Jan. 30, 2017)………………..17

*McCurley v. Royal Seas Cruises, Inc.*, 331 F.R.D. 142 (S.D. Cal. 2019)……...………………11

*M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832 (5th Cir. 2012)……………..……………….10

*Mullen v. Treasure Chest Casino LLC*,186 F.3d 620 (5th Cir. 1999)………..……………….10

*Nationwide Mut. Ins. Co. v. David Randall Assocs., Inc*., 551 F. App'x 638 (3d Cir. 2014)……20

*O'Sullivan v. Countrywide Home Loans, Inc.*, 319 F.3d 732 (5th Cir. 2003)…….…………….3

*Parker v. Anderson*, 667 F.2d 1204 (5th Cir. 1982)……………………………………………..19

*Purdie v. Ace Cash Express, Inc.*

      2003 U.S. Dist. LEXIS 22547, 2003 WL 22976611 (N.D. Tex. Dec. 11, 2003)………..22

*Reed v. General Motors Corp.*, 703 F.2d 170 (5th Cir. 1983)………………………...….…16-21

*Shipes v. Trinity Indus.,* 987 F.2d 311 (5th Cir. 1993)…………………………………………..13

*Slade v. Progressive Sec. Ins. Co*., 856 F.3d 408 (5th Cir. 2017)………………………………14

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011)…………………….…………..10,15,16

*Williams v. Pisa Grp., Inc*., No. 18-4752, 2023 WL 2227697 (E.D. Pa. Feb. 24, 2023)….….…18

*Wolfe v. Anchor Drilling Fluids USA Inc.*,

      2015 U.S. Dist. LEXIS 182835, 2015 WL 12778393 (S.D. Tex. Dec. 7, 2015)….…....21

*Valle v. Glob. Exch. Vacation Club*, 320 F.R.D. 50 (C.D. Cal. 2017)………..……………….11

**Rules and Statutes**

Fed. R. Civ. P. 23……………………………………………………………….. *passim*

47 U.S.C. § 227, *et seq*……………………………………………………….. *passim*

**Treatises**

William B. Rubenstein, 4 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS
(6th ed. June 2022 Update)…………………………………………………………………9,10

Wright and Miller, 7B FEDERAL PRAC. AND PROC. (3d ed.) (Apr. 2020 Update)………..……9

## PLAINTIFF'S UNOPPOSED MOTION FOR
## PRELIMINARY APPROVAL OF CLASS SETTLEMENT

Pursuant to Federal Rule of Civil Procedure 23, Plaintiff Candice Burnett ("Plaintiff" or "Burnett") submits this brief in support of her unopposed motion for preliminary approval of a class action settlement reached with Defendant CallCore Media, LLC ("Defendant" or "CallCore").

## I.    STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING.

Burnett initiated this class-action lawsuit against CallCore in September 2021, alleging the receipt of unlawful telemarketing calls in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA") and Chapter 302 of the Texas Business and Commerce Code ("TBCC"). ECF No. 1. After a lengthy period of class-wide discovery, on December 11, 2023, Burnett filed a motion for class certification seeking to certify a nationwide class under the TCPA and statewide Texas under the TBCC. ECF No. 26.

While the motion for class certification was pending, on December 19, 2023, the parties, their respective counsel and CallCore's insurance carrier appeared before the Honorable Jeff Kaplan (Ret.) in Dallas for an all-day in-person mediation.  By the time mediation occurred, the Parties had the benefit of almost two years of extensive discovery, including depositions, subpoenas and voluminous document production - which included records of over seven million phone calls. Accordingly, the Parties were able to carefully evaluate their positions and make informed decisions about the strengths and weaknesses of their respective cases. Further, with Plaintiff's motion for class certification pending, the Parties had a clear view of the composition of the classes and the potential value of the case.  With Judge Kaplan's helpful facilitation, at the end of the day on December 19, 2023, the Parties entered into an arms-length settlement

1

agreement. The agreement provides that CallCore's liability insurance carrier will pay two million dollars ($2,000,000.00) to a non-reversionary fixed-fund, distributed to class members who submit valid claims, on a *pro rata* basis. Based on historical claims rates, it is estimated claimants would receive at least $120, with an additional 10% for persons with Texas area codes and/or addresses. Burnett seeks to be appointed as the Class Representative and her counsel Christopher E. Roberts of Butsch Roberts & Associates, LLC and Jacob U. Ginsburg of Kimmel & Silverman, P.C. seek to be appointed as Class Counsel. The parties have also requested that the Court appoint Atticus Administration, LLC to serve as the settlement administrator.

After the essential terms of a settlement were reached at mediation, the parties stipulated to stay deadlines related to class certification for Burnett to file this unopposed motion for preliminary approval of class settlement. ECF No. 29. For the reasons stated in this brief, Burnett respectfully requests the Court certify the proposed classes for settlement purposes, appoint Burnett as class representative, appoint her attorneys as class counsel and provide preliminary pproval of the classwide settlement agreement. The Settlement Agreement ("Agreement") is attached as Exhibit 1.

While CallCore has approved the proposed Order, signed the settlement agreement, and does not oppose this Motion, it does not admit the facts, allegations or interpretation of evidence set forth in this Motion, or as alleged in the Complaint.  This Motion was drafted by Plaintiff's counsel. As set forth in the Settlement Agreement, CallCore continues to deny the claims and allegations of its liability.  CallCore's non-opposition to this Motion for settlement purposes only.

//

## II.    STATEMENT OF THE ISSUES TO BE RULED UPON BY THE COURT AND STANDARD OF REVIEW

1.    Are the requirements of Federal Rule of Civil Procedure 23(a), (b)(3) and (e) satisfied for settlement purposes, to warrant preliminary approval of the settlement classes?

2.    Does the classwide settlement entered into, after over two years of litigation, extensive negotiations and a full-day in-person mediation before Judge Jeff Kaplan (Ret.) warrant this Court's preliminary approval?

Primary authority: FED. R. CIV. P. 23.

Standard of review: The Court's class certification and preliminary approval of class settlement decisions are reviewed under the abuse of discretion standard on appeal. *See generally O'Sullivan v. Countrywide Home Loans, Inc.*, 319 F.3d 732, 737 (5th Cir. 2003).

## III.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.  CallCore's lead generation relationship with PHBC.

CallCore Media is a telemarketing and call center services firm that operates various campaigns throughout the United States.  *See* ECF No. 26-3, Lauer Dep. Transcript, 7/24/2023, at 24:20-25:15.  In connection with its debt consolidation/resolution campaign, CallCore operated under the fictitious name "Simple Life Debt Solutions."  *See* ECF No. 26-3, pp. 38:20-39:1. To market its debt settlement business, CallCore contracted with PHBC, a digital lead generator, through an agreement where PHBC would sell "leads" of persons whose data was transmitted on websites operated by PHBC. *See* ECF No. 26-1, pp. 56-62, Lee Dep. Ex. 1, PHBC-CallCore contract. Under that contract, CallCore would pay PHBC $0.04 for every "lead" (name and phone number) submitted on its websites. ECF No. 26-3, Lauer Dep. Transcript, p. 88:21-24. PHBC operated the "debtreliefhelpusa.com" website, which purportedly solicited "consent" to receive telemarketing from listed "partners" identified on the website. *Id.*, pp. 64:25-65:11.

**B. CallCore's telemarketing contract with Yodel.**

CallCore contracted with the now-bankrupt Yodel Technologies, LLC ("Yodel") to place calls on its behalf to PHBC leads *See* ECF No. 26-3. at 109:25-110:11, 111:15-20 (Lee Dep. Ex. 5, CallCore-Yodel Agreement ("Yodel Agreement")); Ex. 3, Deposition of Jonathan Lauer ("Lauer Dep."), 14:15-24, 48:19-22. The Yodel Agreement provides that CallCore has audit rights over Yodel and can dictate the terms of its advertising campaign. *See* ECF No. 26-1, Ex. 5, CallCore_000190-191. Yodel used "soundboard" technologies in its calls to communicate with consumers. This technology operates in a manner that is interactive and plays clips of voice messages in response to human prompts. ECF No. 26-3, Lauer Dep., 14:25-15:3; ECF No. 26-1, Lee Dep., 45:7-46:17, 58:20-24.

When Yodel placed the calls on CallCore's behalf, it used CallCore phone numbers, so recipients of those calls would see a CallCore phone number rather than a number associated with Yodel. Lauer Dep., 37:4-9. CallCore also provided Yodel with scripts to use when calling CallCore's potential customers with its pre-recorded voice technology. Lee Dep., 45:7- 46:17. In short, CallCore had complete control over who Yodel called and the voice technology script. CallCore hired Yodel to place such place calls to consumers whose data was transmitted to CallCore from PHBC websites for CallCore's "debt settlement" campaign. Lee Dep., 185:8-11. During the class period, Yodel placed prerecorded voice calls to over 67,000 calls to PHBC leads who were transferred to CallCore. Lauer Dep., 52:14-21, 53:8-18, 54:10-15, 55:8-16, 56:11-20, 57:10-58:2 (Lauer Dep. Ex. 17 – Call Log, filed via USB drive). The call records show the phone number called, the date of the call, and the name/address of the person called. *Id.* at 58:22-24, 59:23-60:4, 64:15-19.

**C. Candice Burnett receives calls from CallCore and files suit.**

Candice Burnett is a mother of four who has resided in Missouri City, Texas since 2001. Burnett Dec., ¶¶ 8-9. Burnett works in commercial operations for Weatherford International Oil & Gas, where she has worked since 1997. *Id.* at ¶ 7. Burnett was the owner and sole user of a cell phone, the number for which was (713)-xxx-4446. Burnett had been irritated by unsolicited telemarketing calls for years. *Id.* at ¶¶ 13-15.

In January and February of 2021, Burnett received a series of calls from (713) 903-8921 — a number she now knows was used by CallCore. *Id.* at ¶ 25. In February 2021, Burnett answered several of the calls and interacted with a software-based voice, purporting to be a woman named "Lindsey" with "Simple Life Debt Solutions." *Id.* at ¶¶ 13-14. Burnett later learned that Simple Life Debt Solutions was a registered fictitious name for CallCore. *Id.,* at ¶ 14.

Burnett filed this class-action lawsuit in September 2021 against CallCore alleging violations of the TCPA for making calls to her cell phone, which utilized a pre-recorded voice, without her express consent, as well as a claim under Chapter 302 of the TBCC for calling Texas residents for solicitation purposes without registering as a "telephone solicitor" with the Texas Secretary of State. ECF No. 1. In the course of discovery, Burnett learned that her phone number was transmitted to CallCore through a lead-generation website soliciting consumer "consent" operated by PHBC. *See* Ex. 2, Declaration of Christopher. E. Roberts, ¶¶ 14-15. CallCore could not demonstrate that it was listed as a "trusted partner" on the PHBC website. *See* ECF No. 26-1, Ex. 1, at 106:1-106:6, 106:16-107:1; 108:7-11. While over seven million calls were made by or on behalf of CallCore from 2018-2021, there were approximately 67,000 calls that were transferred to CallCore, by vendors including Yodel, whose information was obtained through the PHBC website. *See* ECF No. 27, Excel spreadsheet of PHBC leads transferred to CallCore. It was also

confirmed that CallCore did not register as a "telephone solicitor" in the State of Texas and called approximately 9,000 persons with Texas area codes and/or addresses. *Id.*

In the course of the document-intensive discovery, counsel for the Parties reached impasses at times, but were able to cooperate and work together as collegial adversaries at arms-length. *See* Roberts Dec., ¶¶ 12-18; *see* Ex. 3, Declaration of Jacob U. Ginsburg, ¶¶ 20-24. Ms. Burnett was deposed in an all-day contentious deposition in Houston. *See* Ex. 4, Declaration of Candice Burnett, ¶ 18. CallCore's corporate designees were also deposed during depositions which took an entire day collectively, in Florida. *See* Roberts Dec. ¶ 16. Counsel for both Parties issued various subpoenas and devoted substantial time toward third-party discovery. *Id.* at ¶¶ 13-16. Burnett filed her motion for class certification on December 11, 2023. *See* ECF No. 26.

After the Parties had a clear sense of the makeup of the proposed classes and the strengths and weaknesses of their respective positions on the merits, the Parties and CallCore's liability insurance carrier appeared before retired Judge Jeffrey Kaplan in Dallas. Roberts Dec. ¶¶ 19-20; Burnett Dec., ¶ 25. Through the facilitation of Judge Kaplan, the Parties reached a settlement where CallCore's carrier would pay $2,000,000.00 (the policy cap for a term) to the settlement classes to be distributed from a fixed and non-reversionary fund on a *pro rata* basis to claimants who submit valid claims. Based on historic claims rates, class counsel estimates each claimant will receive at least $120 with Texas-based claimants receiving a 10% additur. Ex. 1, Settlement Agreement, Section 7.

### D.  The proposed Settlement Classes

The two classes of individuals settling claims with CallCore have been defined by the Parties as follows:

**TCPA Class**: The persons to whom calls were placed by or on behalf of CallCore, whose information was obtained from PHBC and the calls were transferred to CallCore; and,

**Texas Class**: The persons with Texas addresses and/or Texas area codes to whom calls were placed on or behalf of CallCore, whose information was obtained from PHBC and the calls were transferred to CallCore.

*See* Settlement Agreement, Section 3. These two classes are collectively referred to as the "Settlement Classes".

### E.  Class Notice and Claims Administration

After learning the general details of the case, including class size, Atticus Administration, LLC sent counsel for all parties a detailed estimate for the approximate cost of administration, of $91,473.00. *See* Roberts Dec., ¶ 26, Dec. Ex. A (Atticus estimate for the cost of administration).

As part of the settlement administration, CallCore has provided Atticus the last known names, addresses, and phone numbers and emails of the members of the Settlement Classes. Ex. 1, Settlement Agreement, Sections 5, 6 and 9. Atticus will then mail the postcard Class Notice to each member of the Settlement Class. *See id.* If a notice is returned as undeliverable, Atticus will then run the address through the National Change of Address database to determine if there is an updated address for the person and send to the new address (if available) accordingly. *See id.* In addition, Atticus will also send the Class Notice to each e-mail address provided to them by CallCore. *See id.* The specifics of the notice plan are further detailed in the Roberts Declaration. Roberts Dec., ¶¶ 27-30.

Atticus will also maintain a settlement website. *Id.* The settlement website will contain information about the case, relevant documents (including the settlement agreement, operative complaint and any pertinent orders from the Court), a copy of the long form notice and a copy of the claim form. *Id.* Class members will have the ability to submit claims by mail, by uploading the claim form to the settlement website, or making a claim through the settlement website. *Id.*

## IV.    SUMMARY OF THE ARGUMENT.

The elements of Rule 23(a), (b)(3) and (e) are readily satisfied.  Where there are more than 67,000 members of the Settlement Classes, numerosity is easily satisfied under Rule 23(a)(1). Further, there are common issues of fact and law among the class members that can be answered in a single stroke. Those questions include: whether Yodel voice technology constitutes a "pre-recorded voice" under 47 U.S.C. § 227(b)(1); whether there is an agency relationship between CallCore and Yodel; whether CallCore "ratified" any alleged violation of Yodel; whether the PHBC website was a valid form of "consent" as defined by the TCPA; and whether CallCore obtained the proper certificate to be a "telephone solicitor" in the State of Texas. Those common questions predominate over individualized inquiries, and common proofs and evidence would be used to answer such questions, as opposed to individualized proofs. Accordingly, commonality and preponderance are satisfied under Rule 23(a)(2) and 23(b)(3). In addition, Burnett's claims are typical of the claims of the two Settlement Classes. Burnett has actively participated through the course of this litigation and has no interest adverse to either of the Settlement Classes and hired competent and experienced counsel. Accordingly, typicality and adequacy are satisfied under Rule 23(a)(3) and 23(a)(4). The Settlement Classes should therefore be conditionally certified for settlement purposes, Burnett should be appointed Class Representative, Christopher E. Roberts and Jacob U. Ginsburg should be appointed Class Counsel and Atticus Administration should be appointed Class Administrator.

Furthermore, the Settlement Agreement is fair and adequate and therefore warrants approval. The Parties reached this settlement after over two years of litigation, months of negotiations and conclusion of an all-day in-person mediation before a distinguished mediator. The settlement has all the hallmarks of an arms-length settlement with no collusion between

counsel. Further, the Parties have litigated this case for over two years, conducted depositions and Burnett has moved for Class Certification. The Parties were therefore able to carefully and prudently evaluate the strengths and weaknesses of their respective cases before entering into a settlement. Moreover, in the absence of approval of this settlement, protracted litigation is likely and a successful outcome is uncertain. Where Burnett and Class Counsel strongly recommend approval and absent class members will have the opportunity to opt-out and/or object, the Court should afford preliminary approval. Finally, where the per claimant recovery is at or above most other TCPA class settlements, the settlement is fair and adequate.  As such, preliminary approval is warranted.

## V.    ARGUMENT

### A.    This Court Should Certify the Class for Settlement Purposes.

The proposed settlement comes prior to formal class certification and seeks to certify a class simultaneous with a settlement, commonly referred to as a "settlement class." As such, this Court must first ensure that the proposed class certification meets the requirements of Rule 23(a) and (b)(3), with the exception that the Court need not consider, in analyzing a proposed settlement class, whether trial would present intractable management problems. *See generally* William B. Rubenstein, 4 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS § 13:18 (6th ed. June 2022 Update) (hereafter "NEWBERG"); Wright and Miller, 7B FEDERAL PRAC. AND PROC. § 1797.2 (3d ed.) (Apr. 2020 Update).

When analyzing a proposed settlement class, the Court must first ensure that the proposed class meets the requirements of Fed. R. Civ. P. 23(a) and (b)(3), with the exception that the Court need not consider, in analyzing a proposed settlement class, whether trial would present intractable management problems. *See generally* NEWBERG ON CLASS ACTIONS § 13:12 (5th ed.) (Dec. 2021

9

Update). The Supreme Court reiterated that a trial court must conduct a "rigorous analysis" to confirm that the requirements of Rule 23 have been met, *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). As set forth below, the class certification requirements are readily satisfied for the proposed settlement class.

### 1.    The class meets the numerosity requirement of Rule 23(a)(1).

Rule 23(a) requires that the number of class members be "so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a). Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." To satisfy the numerosity prong, "a plaintiff must ordinarily demonstrate some evidence or reasonable estimate of the number of purported class members." *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 840 (5th Cir. 2012) (affirming class certification where numerosity was challenged, finding "over 100 class members" to be sufficient). While "there is no magic number, a class of more than 100 members generally satisfies the numerosity requirement." *Mullen v. Treasure Chest Casino LLC*, 186 F.3d 620, 624 (5th Cir. 1999) (finding that class of 100 and 150 satisfies numerosity requirement).

Here, there can be no serious challenge to numerosity for any of the classes. Based on the class data provided by CallCore, the pre-recorded class consists of 67,113 persons. Likewise, the Texas class consists of over 9,000 individuals. Numerosity is satisfied.

### 2.    The classes meet the commonality requirement of Rule 23(a)(2) and the preponderance requirement of Rule 23(b)(3).

Because of the overlap of the 23(a)(2) commonality and Rule 23(b)(3) predominance analyses, Plaintiff addresses the two inquiries in tandem below.

### a.    The settlement classes satisfy commonality under Rule 23(a)(2).

Commonality only requires that "there are questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). "[T]he commonality requirement is not usually a contentious one … and

is easily met in most cases." NEWBERG §13:18. To demonstrate commonality, plaintiff's "claims must depend upon a common contention…that is capable of class wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350.  The Fifth Circuit has recognized that 'even a single common question will do*." In re Deepwater Horizon*, 739 F.3d 790, at 811(5th Cir. 2014); *see also Heartland Payment Sys*., 851 F. Supp. 2d at 1052 (no requirement that "all questions of law and fact be common," or that "each class member have 'suffered a violation of the same provision of law.')

Here, there are numerous questions common to all members of the class. Some of those questions include whether:

(1) Yodel's voice technology calls qualify as pre-recorded voice calls under 47 U.S.C. § 227(b)(1). *See Braver v. Northstar Alarm Servs., LLC*, 329 F.R.D. 320, 328 (W.D. Okla. 2018) (whether soundboard/avatar calls made by Yodel qualify as a "prerecorded voice" under the TCPA is a common question); *Head v. Citibank,* 340 F.R.D. 145, 151 (D. Ariz. 2022) (same);

(2) The contract between Yodel and CallCore was sufficient to create an agency relationship for purposes of vicarious liability. *Braver., LLC*, 329 F.R.D. 320, 328 (question of "whether Northstar is liable for calls placed on its behalf through Yodel's system" establishes commonality); *Hand v. Beach Entm't KC, LLC*, 456 F. Supp. 3d 1099, 1141 (W.D. Mo. 2020) (whether vicarious liability can be imputed against the principal for its telemarketing vendor's text messages is "a question capable of classwide resolution");

(3) CallCore ratified purported violations by Yodel. *Valle v. Glob. Exch. Vacation Club*, 320 F.R.D. 50, 61 (C.D. Cal. 2017) (common question is whether the defendants ratified agents' conduct by accepting customers the agents sent);

(4) The PHBC website was a valid mechanism of CallCore obtaining consumer "consent" to place calls with pre-recorded messages. *See McCurley v. Royal Seas Cruises, Inc.*, 331 F.R.D. 142, 169 (S.D. Cal. 2019) ("whether Royal's lead generation program is a valid means of obtaining consent for calls by a third-party concerning Royal's services and whether the leads constitute consent are common questions whose answers are apt to drive resolution of the case");

(5) whether CallCore obtained the requisite certificate to make telephone solicitations to citizens of the State of Texas.

The commonality requirement of Rule 23(a)(2) is met.

### b. Common issues and evidence predominate over individual issues and evidence.

Before certifying a class under Rule 23(b)(3), a court must determine that "the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). "In order to 'predominate,' common issues must constitute a significant part of the individual cases." *Jenkins v. Raymark Indus., Inc.,* 782 F.2d 468, 472 (5th Cir. 1986). Rule 23(b)(3) "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 623 (1997). Predominance requires consideration of "how a trial on the merits would be conducted if a class were certified*.*" *Gene And Gene LLC v. BioPay LLC,* 541 F.3d at 318, 326 (5th Cir. 2008). A "plaintiff need not show they will prevail on predominantly common issues; only that they can offer common evidence to prove their claims." *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds,* 568 U.S. 455, 459 (2013).

Here, each of the issues identified in the commonality section are classwide questions that could not be subsumed with individualized inquiries. *See Kimble v. First Am. Home Warranty Corp.*, No. 23-10037, 2024 WL 220369 2024 U.S. Dist. LEXIS 9741, at *15 (E.D. Mich. Jan. 19, 2024) ("the common questions about the defendants' liability under the TCPA predominate over any individual issues in the case"). Just as common issues predominate, common evidence and proofs will predominate over individualized proofs. *Id.* ("these issues do not require proof as to any individual member.") As to the issue of agency and vicarious liability, the Court and/or the jury would review the contract(s) between CallCore and Yodel, as well as CallCore's testimony about the business relationship between the two companies. There is nothing specific to Burnett involved in that inquiry. Likewise, on the question of ratification, the Court and/or jury would review the PHBC website to assess whether CallCore should have known it was not a "marketing

partner" and can also listen to the testimony of CallCore about complaints of TCPA violations. Because those questions predominate over individual issues, Rule 23(b)(3) is satisfied.

### 3.    Plaintiff satisfies the typicality requirement of Rule 23(a)(3).

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class[.]" The threshold for … typicality under Rule 23(a) [is] not high." *Gene And Gene LLC,* 541 F.3d at 325; *see also Shipes v. Trinity Indus.,* 987 F.2d 311, 316 (5th Cir. 1993). Typicality "does not require a complete identity of claims." *James v. City of Dallas,* 254 F.3d 551, at 571 (5th Cir. 2001). Rather, "the critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class." *Id.* The "analysis focuses on whether the named representative's claims are typical, not whether the representative is." *Hordge v. First Nat'l Collection Bureau, Inc.*, No. 4:15-CV-1695, 2018 U.S. Dist. LEXIS 218823, at *13-14 (S.D. Tex. July 5, 2018) (Ellison, J.) (*citing Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002)).

Here, Plaintiff's claims are typical of the claims of all class members. Burnett asserts she received calls placed on CallCore's behalf to her cell phone, where the calls used Yodel's pre-recorded voice technologies.  The success of the affirmative elements of her claim will turn on whether Yodel was acting as an agent of CallCore, whether CallCore had reason to know of Yodel's violations, and whether Yodel's "soundboard" voice technologies constitute a "pre-recorded voice" as defined by the TCPA. Whether CallCore can prevail on its affirmative defense of express written consent turns on whether CallCore can demonstrate it was a listed "partner" on the PHBC website and the question of whether express written consent can be effectuated by a third-party lead generator.

//

### 4. Plaintiff and her counsel satisfy the adequacy requirement of Rule 23(a)(4).

Rule 23(a)(4) requires "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). Adequate representation invokes two inquiries: (1) whether the class counsel are "qualified, experienced and generally able to conduct the litigation" and (2) whether the named plaintiffs have interests that are "antagonistic" to the other class members. The adequacy inquiry can be broken up into three subcategories: (1) "the zeal and competence of the representative[s'] counsel"; (2) "the willingness and ability of the representative[s] to take an active role in and control the litigation and to protect the interests of absentees"; and (3) the risk of "conflicts of interest between the named plaintiffs and the class they seek to represent." *Slade v. Progressive Sec. Ins. Co.*, 856 F.3d 408, 412 (5th Cir. 2017). To meet the adequacy requirement, "the court must find that class representatives, their counsel, and the relationship between the two are adequate to protect the interests of absent class members." *Unger v. Amedisys Inc.*, 401 F.3d 316, 321 (5th Cir. 2005).

Here, Plaintiff has retained counsel experienced in class-actions and consumer litigation-especially the TCPA. Roberts Dec., ¶¶ 4-10; Ginsburg Dec. ¶¶ 6-16. Plaintiff and her counsel vigorously prosecuted this case and efficiently and effectively reached a settlement on behalf of the class, that exceeds the per claimant recovery in most TCPA class settlements. *See* infra § V(B)(1). Plaintiff and her counsel's interests are not antagonistic to the members of the Settlement Class. Moreover, Plaintiff's meticulous record keeping, and her consistent communication with her counsel, and active participation in the case make her an excellent class representative. *See* Burnett Dec. ¶¶ 17-25; Ginsburg Dec. ¶¶ 26-27; Roberts Dec. ¶ 17.

14

### B.    This Settlement Should Be Preliminarily Approved

Courts preliminarily consider the Rule 23(e) factors when determining whether to preliminarily approve a class action settlement. *See id.*; *see* FED. R. CIV. P. 23(e)(1)-(2). In the context of preliminary approval, Rule 23(e) directs putative class counsel to provide the Court with information sufficient to enable the court to determine that the settlement is fair, reasonable and adequate, and that notice is justified because the Court will likely grant final approval to the settlement. *See id.*

Before class notice can issue, the putative class representatives must demonstrate "that the Court will likely be able to" approve the settlement under Rule 23(e)(2); and (ii) "certify the class for purposes of judgment" arising from the settlement. FED. R. CIV. P. 23(e)(1)(B). Under Rule 23(e)(2), a court may only approve a settlement based on a finding that the proposed settlement is "fair, reasonable and adequate" after considering whether:

(A)    the class representatives and class counsel have adequately represented the class;

(B)    the proposal was negotiated at arm's length;

(C)    the relief provided for the class is adequate, taking into account:
    (i)    the costs, risks, and delay of trial and appeal;
    (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims;
    (iii)    the terms of any proposed award of attorney's fees, including timing of payment; and
    (iv)    any agreement required to be identified under Rule 23(e)(3); and,

(D)    the proposal treats class members equitably relative to each other.

FED. R. CIV. P. 23(e)(2).

Judicial and public policy favor settlement of and of class actions. *Wal-Mart Stores*, *Inc.* 396 F.3d at 116. The Fifth Circuit has identified six factors that a court should consider when considering whether a proposed settlement is fair, reasonable, and adequate:

15

(1) whether the settlement was a product of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the factual and legal obstacles prevailing on the merits; (5) the possible range of recovery and the certainty of damages; and (6) the respective opinions of the participants, including class counsel, class representative, and the absent class members.

*Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983). Those six items have been referred to as the "*Reed* factors." As set forth below, the agreement reached between the putative classes and CallCore satisfy each of the *Reed* factors.

### 1. There was no fraud or collusion in this arms length settlement.

The "Court may presume that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary." *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 651 (N.D. Tex. 2010). When a class settlement is reached through arm's-length negotiations after meaningful discovery, a "presumption of fairness, adequacy, and reasonableness may attach." *Wal-Mart Stores, Inc.*, 396 F.3d at 116; 4 NEWBERG ON CLASS ACTIONS § 13:45 (5th ed.). Where settlement is reached before a neutral mediator, that is suggestive of an arms-length settlement devoid of fraud or collusion. *See Cole v. Collier*, No. 4:14-cv-1698, 2018 U.S. Dist. LEXIS 97110, at *16-17 (S.D. Tex. June 8, 2018).

Here, the Parties engaged in substantial discovery, in a process which took a year and a half. The Parties worked at arms-length through records involving over seven million calls. The Parties held numerous conferences (several of them contentious) regarding CallCore's document production and records. Burnett's counsel took an all-day deposition of CallCore's corporate designees and CallCore's counsel took an all-day deposition of Burnett, which was contentious and at times, adversarial. *See* Roberts Dec. ¶ 16; Burnett Dec. ¶¶ 18-23. In July of 2023, almost two years after suit was filed, Plaintiff had enough information to make an initial classwide

settlement demand, and to mediate the case. Roberts Dec. ¶¶ 12-19. The Parties agreed to mediate in Dallas before the Honorable Jeff Kaplan (ret.)  At the end of an all-day mediation in Dallas, the Parties agreed on a two-million-dollar *pro rata* classwide settlement. *See id.* at ¶ 19-23.

Furthermore, the result of this settlement demonstrates it was not the result of collusion. The two million dollar class fund distributed on a *pro rata* basis to claimants is expected to result in a recovery of at least $120 pe claimant, which is in line or above typical TCPA settlements. *See Bowman v. Art Van Furniture, Inc.*, 2018 WL 6444514, at *2, 5 (E.D. Mich. Dec. 10, 2018) (approximately $99 per claimant); *Boger v. Citrix Sys., Inc.*, 2023 WL 3763974, at *11 (D. Md. June 1, 2023) ("the expected settlement payment for each Class Member is $44.14, which exceeds the typical value of claims in similar settlements and the likely statutory damages for TCPA claims"); *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) (recovery of $34.60 per claimant "falls within the range of recoveries in other TCPA actions"); *Markos v. Wells Fargo Bank, N.A.*, 2017 WL 416425, at *4 (N.D. Ga. Jan. 30, 2017) (recovery of $24 per claimant "an excellent result when compared to the issues Plaintiffs would face if they had to litigate the matter").

The process and the resolution and the outcome have all the hallmarks of an arms-length settlement and no indicia of fraud or collusion.

### 2. The complexity, expense and potential duration of litigation favor approval of the settlement.

Risks of protracted litigation and delay favor approval of settlement. *See Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004*). In re Heartland Payment System, Inc. Customer Data Security Breach Litigation*, 851 F. Supp. 2d 1040, 1064 (S.D. Tex. 2012) ("When the prospect of ongoing litigation threatens to impose high costs of time and money on the parties, the reasonableness of approving a mutually-agreeable settlement is strengthened.")

TCPA class actions can be immensely challenging and can result in protracted litigation. For instance, the case *Krakauer v. Dish Network L.L.C.*, was filed in 2014 and received final approval in 2023. *See Krakauer*, No. 1:14-CV-333, 2023 WL 5237091 (M.D.N.C. Aug. 15, 2023). Similarly, the TCPA class-action *Williams v. Pisa Grp., Inc.*, No. 18-4752, 2023 WL 2227697 (E.D. Pa. Feb. 24, 2023) was filed in 2018, certified in 2023, and litigation remains ongoing. Here, it took two-and-a-half years to get to the point where the classes, the Defendant and the insurer felt comfortable entering to a universally beneficial settlement.  If settlement is denied, years of additional protracted litigation would likely follow. The complexity, expense and potential duration of litigation favor approval of the settlement

### 3.  The stage of litigation and available discovery favor approval of the settlement

Completion of discovery and significant litigation weigh in favor of a finding that the Settlement is fair, reasonable, and adequate. When discovery has been completed and legal issues decided, the parties and the court have sufficient information with which to evaluate the merits of their positions. *Cole*, No. 4:14-CV-1698, 2018 WL 2766028, at *5 (*citing Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004). Here, the parties completed the pleadings stage and expansive and voluminous discovery. The Parties reviewed records of over seven million calls. Burnett and representatives from CallCore were deposed, and both Parties served at least three subpoenas to third parties. After a year and a half of discovery, Burnett filed her motion for class certification. *See* ECF No. 26. Accordingly, the Parties and CallCore's insurance carrier, were all able to thoroughly evaluate their positions on settlement when negotiating, and a third-party neutral was able to bring the parties to a resolution.

**4. The probability of success on the merits favor approval.**

The probability of the Plaintiff's success on the merits is the most important factor for courts to consider when evaluating a class action settlement. *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982). "A district court faced with a proposed settlement must compare its terms with the likely rewards the class would have received following a successful trial of the case." *Cole v. Collier*, No. 4:14-cv-1698, 2018 WL 2766028 2018 U.S. Dist. LEXIS 97110, at *19 (S.D. Tex. June 8, 2018).

Here, while Burnett is confident in the merits of her case, success is far from a certainty. CallCore did not directly place the calls at issue to Burnett or the putative classes. Rather, Burnett's now-bankrupt vendor Yodel Technologies did. TCPA claims asserted under theories of vicarious liability are notoriously unpredictable. *See Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 656 (4th Cir. 2019) (affirming jury verdict in favor of class-plaintiffs against Dish Network for TCPA violations under various theories of vicarious liability); *contra Keating v. Peterson's Nelnet, LLC*, 615 Fed. App'x. 365, 374-75 (6th Cir. 2015) (affirming the district court's order of summary judgment in favor of the TCPA defendants, as to the plaintiff's vicarious liability claims).

Furthermore, uncertainty surrounding future deference to regulatory agencies favor settlement. The TCPA is promulgated by rules enacted by the FCC. *See generally,* 47 U.S.C. § 227, *et seq;* 47 C.F.R. § 64.1200, *et seq*. While the Fifth Circuit continues to afford a degree of deference to regulatory agencies, there is a heightened standard applied to whether the agency rulings are enforceable and there has been a general trend away from judicial deference to regulatory agencies. *See All. for Fair Bd. Recruitment v. SEC*, 85 F.4th 226 (5th Cir. 2023); *but see Consumers' Rsch. v. FCC*, 63 F.4th 441 (5th Cir. 2023) (agency must prove its authority

19

through intelligible delegation to enact rules).[1]  If the settlement is not approved, issues in the TCPA currently seen as settled-law, like the definition of "pre-recorded voice", what factors warrant the imposition of vicarious liability, and which phones are subject to 227(b) protection, could be called into question by the time this case is ripe for trial. In short, the uncertainty of Burnett's claims and potential changes in the legal landscape favor approval of settlement.

**5.    The range of recovery and certainty of damages favor approval.**

Even if the Classes prevailed on the merits, there is no guarantee of actual *recovery*. Here, while defending under a reservation of rights, CallCore's liability insurance carrier agreed to pay the cost of the class settlement. *See* Ex. 1, Agreement. However, in certain declaratory actions, TCPA liability was rendered outside the scope of covered claims for liability insurance *See Nationwide Mut. Ins. Co. v. David Randall Assocs., Inc*., 551 F. App'x 638, 639 (3d Cir. 2014). Accordingly, if approval is denied, even if every contested issue on class certification, summary judgment and and/or trial went in favor of Burnett and the classes, as a practical matter, they could wind up empty-handed. The range and certainty of actual recovery favor approval of the class settlement.

**6.    The Settlement is endorsed by the class representative and class counsel.**

When "assessing the fairness of a settlement, the Court must look to the opinions of Class Counsel, the Class Representatives, and absent Class members." *Cole*, No. 4:14-CV-1698, 2018 WL 2766028, at *5.  The "endorsement of class counsel is entitled to deference, especially in light of class counsel's significant experience in complex civil litigation and their lengthy opportunity to evaluate the merits of the claims." *Id.*, (*quoting DeHoyos v. Allstate Corp*., 240 F.R.D. 269, 292

---

[1] *Consumers' Research* was recently argued *en banc*. 5th Cir. Case No. 22-60008.

(W.D. Tex. 2007)). Here, Burnett and her counsel endorse the settlement entered into at mediation. Burnett is the sole class representative and participated vigilantly for two and a half years. *See generally,* Burnett Dec. ¶¶ 16-25. Given that the expected per claimant recovery is in line or above typical TCPA class settlements, the settlement is also endorsed by her counsel.  Roberts Dec., ¶¶ 4-10; Ex. 3, Ginsburg Dec. ¶¶ 6-16.  Absent class members will have the opportunity to participate in the settlement, opt-out or object. *See* Notice Plan. Accordingly, the sixth *Reed* factor favors approval.

### C. Plaintiff will request attorneys' fees, costs and a class representative service award that are fair and reasonable.

If preliminary approval is granted, after notices have been sent and claims returned, Plaintiff's counsel will seek seeks attorneys' fees of up to 33.3% of the settlement fund, or $666,666.67 of the $2,000,000.00 common fund. Roberts Dec. ¶ 32. In addition, Burnett will also seek an amount up to $12,000.00, as a representative service award. *See id.*

The 33% attorney fee is in line or below many class settlements within the Fifth Circuit and other TCPA class-action settlements nationwide. *See  Wolfe v. Anchor Drilling Fluids USA Inc.*, 2015 U.S. Dist. LEXIS 182835, 2015 WL 12778393, *3 (S.D. Tex. Dec. 7, 2015 (awarding 40% of the common fund as attorneys' fees); *Frost v. Oil States Energy Servs., L.L.C.*, 2015 U.S. Dist. LEXIS 183104, 2015 WL 12780763, *2 (S.D. Tex. Nov. 19, 2015) (one-third of common fund as attorneys' fees); *Campton v. Ignite Restaurant Group, Inc.*, 2015 U.S. Dist. LEXIS 182828, 2015 WL 12766537, *3 (S.D. Tex. June 5, 2015) (one-third); *Al's Pals Pet Care v. Woodforest Nat'l Bank*, No. 4:17-CV-3852, 2019 WL 387409, at *10 (S.D. Tex. Jan. 30, 2019) (one third) *See Blackmon v. Zachary Holdings, Inc*., 2022 WL 3142362 2022 U.S. Dist. LEXIS 139417, at *13 (W.D. Tex. Aug. 5, 2022) (one-third);  *Jones v. JGC Dallas LLC*, No. 3:11-CV-2743-O, 2014 U.S. Dist. LEXIS 177472, 2014 WL 7332551, at *6-7 (N.D. Tex. Nov. 12, 2014)

(approving fee award of 40% of common fund); *Kolinek v. Walgreen Co*., 311 F.R.D. 483, 503 (N.D. Ill. 2015) (36% of fund in TCPA class settlement); *Boger v. Citrix Sys., Inc*., 2023 WL 3763974, at *12 (D. Md. June 1, 2023) (33% of fund in TCPA class settlement); *Gergetz v. Telenav, Inc*., 2018 WL 4691169, at *7 (N.D. Cal. Sep. 27, 2018) (30% of fund in TCPA class settlement).

In the two and a half years this case has been pending, counsel worked diligently and efficiently, traveled from St. Louis and Philadelphia to Houston, Dallas and Daytona Beach, navigated challenges on discovery, sorted through records of millions of phone calls, took and defended depositions, issued various subpoenas, briefed a motion for class certification and worked assiduously to prepare for an all-day mediation and arrived at a satisfactory class settlement an efficient manner. The attorney fee of 33% of the common fund is fair and reasonable compensation for the work performed and result obtained.

The proposed class representative incentive award is also reasonable and within the range of what has been approved in the Fifth Circuit, and for TCPA class actions nationwide. In *Lee v. Metrocare Servs.*, 2015 U.S. Dist. LEXIS 194001, at *24-25 (N.D. Tex. July 1, 2015), the Court noted that class incentive awards are generally at or less than 1% of the common fund. *Id.* although 1% of the common fund is not a formal ceiling on service awards in the Fifth Circuit, evaluating service awards in light of the size of the common fund is nonetheless sensible and consistent with district court precedent within the Fifth Circuit. *Purdie v. Ace Cash Express, Inc.*, CIV.A. 301CV1754L, 2003 U.S. Dist. LEXIS 22547, 2003 WL 22976611, at *7 (N.D. Tex. Dec. 11, 2003) (approving $16,665 incentive award to named plaintiffs for actively participating in the lawsuit); *In re Lease Oil Antitrust Litig.*, 186 F.R.D. 403, 449 (S.D. Tex. 1999) (approving awards of up to $10,000 per class representative in 1999). The $12,000.00 service

22

award Burnett seeks is also in line with other TCPA class settlements nationwide. *See Charvat v. Valente*, 2019 WL 55769322019, 2019 U.S. Dist. LEXIS 187225, at \*33 (N.D. Ill. Oct. 28, 2019) ($25,000 award); *Johansen v. One Planet Ops, Inc*., 2020 WL 7062806, at \*5 (S.D. Ohio Mar. 25, 2020) ($10,000 award).Here, Plaintiff fought for the classes dutifully, and actively stayed involved in and participated in the case (including attending an all-day mediation). Burnett Dec. ¶¶ 18-22. An incentive award of $12,000.00 incentive award is fair and reasonable.

Finally, Plaintiff cannot yet advise the Court of the response from class members. Under the Settlement Agreement, and pursuant to FED. R. CIV. P. 23(e), Class Members will receive notice that fees, costs, and litigation expenses will be sought, and will be provided information about how they can object, assuming the Court preliminarily approves the Settlement. Plaintiff's counsel will then file a motion for fees and expenses pursuant to both the Settlement Agreement and FED. R. CIV. P. 23. In turn, this Court will then award the attorneys' fees, costs, and service awards, if any, that it determines appropriate assuming the Settlement is finally approved.

### D.  The Court should approve the class notice and administration plan.

When granting preliminary approval of a class settlement, the Court must determine that the notice and mailing plan satisfies due process and the requirements set forth in Federal Rule of Civil Procedure 23(c)(2)(B). *Jallo v. Resurgent Capital Servs., L.P*., 2016 WL 6610322, 2016 U.S. Dist. LEXIS 192270, at \*6 (E.D. Tex. Nov. 8, 2016). The Parties have retained the highly experienced firm, Atticus, to issue the notice and administer the class. The proposed Notice is attached as Exhibit 1 to the Settlement Agreement. The Notice Plan is described at length in the Agreement and the Roberts Declaration. Class Members will receive notice by mail and email (where e-mail addresses available), have access to a user-friendly website and have 90 days to

submit a claim or 60 days to opt-out or object to the settlement. The Notice and Notice Plan satisfy the requirements of due process and Fed. R. Civ. P. 23(c)(2)(B).

## VI.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Court: (1) conditionally certify the two Settlement Classes under Fed. R. Civ. P. 23(a) and (b) for settlement purposes; (2) approve the proposed class Settlement Agreement; (3) appoint Plaintiff Candice Burnett to serve as the class representative; (4) approve Christopher E. Roberts of Butsch Roberts & Associates LLC and Jacob U. Ginsburg to serve as Class Counsel; (5) approve Atticus Administration LLC to serve as the settlement administrator; (6) direct that notice be issued by the Administrator; and, (7) to schedule a hearing for final approval of the settlement.

Respectfully submitted,

*/s/ Christopher E. Roberts*
Christopher E. Roberts (SDTX #3708019)
Butsch Roberts & Associates LLC
7777 Bonhomme Avenue, Suite 1300
Clayton, Missouri 63105
Phone: (314) 863-5700
Fax: (314) 863-5711
E-mail: croberts@butschroberts.com

*/s/ Jacob U. Ginsburg*
Jacob U. Ginsburg, Esq. (SDTX# 3568914)
Kimmel & Silverman, P.C.
30 East Butler Ave.
Ambler, Pennsylvania 19002
Phone: (267) 468-5374
Facsimile: (877) 788-2864
Email: jginsburg@creditlaw.com
teamkimmel@creditlaw.com

Counsel for Plaintiff

24

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 26, 2024, a copy of the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all counsel of record.

/s/ *Jacob U. Ginsburg*