**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **CANDICE BURNETT,** *individually and on behalf of all others similarly situated*, | § § § | Civil Action No.: 4:21-cv-03176 |
| *Plaintiff,* | § § | |
| v. | § § | Hon. Keith P. Ellison |
| | § § | |
| **CALLCORE MEDIA, INC.,** | § § | |
| *Defendant.* | § § | |

**PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT, AWARD OF A REPRESENTATIVE SERVICE AWARD AND AN AWARD OF ATTORNEYS' FEES AND LITIGATION EXPENSES**

Christopher E. Roberts (SDTX #3708019)
Butsch Roberts & Associates LLC
7777 Bonhomme Avenue, Suite 1300
Clayton, Missouri 63105
Phone: (314) 863-5700
Fax: (314) 863-5711
E-mail: croberts@butschroberts.com

Jacob U. Ginsburg, Esq. (SDTX# 3568914)
Kimmel & Silverman, P.C.
30 East Butler Ave.
Ambler, Pennsylvania 19002
Phone: (267) 468-5374
Facsimile: (877) 788-2864
Email: jginsburg@creditlaw.com
teamkimmel@creditlaw.com

*Attorneys for Plaintiff*

Dated: June 21, 2024

## <u>TABLE OF CONTENTS</u>

I.   STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING…..…...…….…..1

II.  STATEMENT OF THE ISSUES TO BE RULED UPON BY THE COURT AND
     STANDARD OF REVIEW……………………………………………..……………......2

III. SUMMARY OF THE ARGUMENT……………………………………..………………2

IV.  RELEVANT BACKGROUND……………………………..…………….…………….3

    A.  This Lawsuit and the Settlement Negotiations…………….……...…………………..3

    B.  Summary of the Settlement Terms……………………………………..……...…....3

    C.  The Court's Preliminary Approval Order……………………………………...…………4

    D.  Class Notice and Claims Administration…………………………………………5

    E.  Payment to Claimants……………………………………………………………..6

V.   ARGUMENT

    A.  This Court Should Grant Final Approval of the Settlement……………..……..……………6

        1.  There is no evidence the settlement was obtained by fraud or collusion……………..7

        2.  The settlement achieves an excellent result for the class members considering
            the complexity of the litigation, continued expense and likely duration of the
            litigation………………………………………………………………....….………..8

        3.  The settlement was achieved after significant discovery was completed and Plaintiff
            moved for class certification…………..……………………………….…………..8

        4.  There was no guarantee Plaintiff would prevail on the merits of her case…..……..…9

        5.  Significant relief is being provided to the class particularly considering the
            uncertainty of damages…………………………………………………………...…9

        6.  Class counsel, the class representative, and the absent class members, all believe the
            Court should grant final approval of the settlement…………………………………10

        7.  Notice to the class was thorough and satisfies due process…………………………11

    B.  This Court Should Approve Class Counsel's Requested Attorneys' Fees and Litigation
        Expenses and the Requested Representative Service Award for Plaintiff………………13

        1.  The Percentage-of-Recovery Method is Proper in This Common Fund Case...……13

        2.  The *Johnson* Factors Establish the Fairness and Reasonableness of the Requested
            Attorneys' Fees ……..……………………………………..……………...……14

            a.  The Time and Labor Factor………………………………………………14

b.  The Novelty and Difficulty of the Issues……………………………………16

c.  The Skill Required to Properly Perform the Legal Services ………...………16

d.  The Preclusion of Other Employment…………………………………….…16

e.  The Customary Fee………………………………………………………….16

f.  Whether the Fee is Fixed or Contingent…………………………………...17

g.  Time Limitations Imposed by the Client or Other Circumstances…………..17

h.  The Amount Involved and the Results Achieved……………………………17

i.  The Experience, Reputation and Ability of the Attorneys………………..…17

j.  The Undesirability of the Case……………………………………………....18

k.  The Nature and Length of Relationship With the Client……………………18

l.  Awards in Similar Cases……………………………………………………18

3.  The Requested Representative Service Award Should be Approved ……………18

VI.  CONCLUSION……………………………………………………………...…………19

## **TABLE OF AUTHORITIES**

**Cases**

*Ayers v. Thompson*, 358 F.3d 356 (5th Cir. 2004) ........................................................ 8

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980) ........................................................ 13

*Boger v. Citrix Sys., Inc.*, 2023 WL 3763974 (D. Md. June 1, 2023) .................................. 10, 17

*Bowman v. Art Van Furniture, Inc.*, 2018 WL 6444514 (E.D. Mich. Dec. 10, 2018) ................ 10

*Bowman v. Art Van Furniture, Inc.*, 2018 WL 6445389 (E.D. Mich. Dec. 10, 2018) ................ 12

*Braver v. Northstar Alarm Servs., LLC*, 2020 WL 6468227 (W.D. Okla. Nov. 3, 2020) ....... 16-17

*Celeste v. Intrusion, Inc.*, 2022 WL 17736350 (E.D. Tex. Dec. 16, 2022) ...................... 10, 13-14

*Charvat v. Valente*, 2019 WL 5576932 (N.D. Ill. Oct. 28, 2019) .............................................. 19

*Couser v. Comenity Bank*, 125 F. Supp. 3d 1034 (S.D. Cal. 2015) .............................................. 12

*Di Giacomo v. Plains All Am. Pipeline*, 2001 WL 34633373 (S.D. Tex. Dec. 19, 2001) ............ 15

*Eisen v. Carlisle & Jacquilin*, 417 U.S. 156 (1974) .................................................................... 11

*Frost v. Oil States Energy Servs., L.L.C.*, 2015 WL 12780763 (S.D. Tex. Nov. 19, 2015) ......... 16

*In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781 (N.D. Ill. 2015) .............. 10

*In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508 (E.D. Mich. 2003) ...................................... 11

*In re Flint Water Cases*, 571 F. Supp. 3d 746 (E.D. Mich. 2021) .......................................... 11-12

*In re Heartland Payment System, Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040
  (S.D. Tex. 2012) .................................................................................................................... 9

*Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) ............................ 2, 14

*Keating v. Peterson's Nelnet, LLC*, 615 Fed. App'x. 365 (6th Cir. 2015) .................................... 9

*Kolinek v. Walgreen Co.*, 311 F.R.D. 483 (N.D. Ill. 2015) .................................................. 16-17

*Krakauer v. Dish Network, L.L.C.*, 2925 F.3d 643 (4th Cir. 2019) ............................................ 9

*Krakauer v. Dish Network, L.L.C.*, 2023 WL 5237001 (M.D.N.C. Aug. 15, 2023) ..................... 8

*Lee v. Glob. Tel\*Link Corp.*, 2018 WL 4625677 (C.D. Cal. Sep. 24, 2018) ................................ 12

*Markos v. Wells Fargo Bank, N.A.*, 2017 WL 416425 (N.D. Ga. Jan. 30, 2017) ......................... 10

*Nationwide Mut. Ins. Co. v. David Randall Assocs., Inc.*, 551 F. App'x 638 (3d Cir. 2014) ......... 9

*Newby v. Enron Corp.*, 394 F.3d 296 (5th Cir. 2004) .................................................................... 7

*O'Sullivan v. Countrywide Home Loans, Inc.*, 319 F.3d 732 (5th Cir. 2003) ............................... 2

*Parker v. Anderson*, 667 F.2d 1204 (5th Cir. 1982) ...................................................................... 9

*Quintanilla v. A&R Demolition, Inc.*, 2008 WL 9410399 (S.D. Tex. May 7, 2008) .................. 7-8

*Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513 (6th Cir. 1993) ...................................... 13

*Reed v. General Motors Corp.*, 703 F.2d 170 (5th Cir. 1983) .................................................... 2, 7

*Rogers v. Lumina Solar, Inc.*, 2020 WL 3402360 (D.D.C. June 19, 2020) ................................. 12

*Schwartz v. TXU Corp.*, 2005 WL 3148350 (N.D. Tex. Nov. 8, 2005) .................................. 14-17

*Strano v. Kiplinger Washington Editors, Inc.*, 2023 WL 6628013

  (E.D. Mich. Oct. 11, 2023) ................................................................................................ 10-11

*T.K. Through Leshore v. Bytedance Tech. Co.*, 2022 WL 888943 (N.D. Ill. Mar. 25, 2022) ...... 12

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632 (5th Cir. 2012) ............................ 13

*Vasco v. Power Home Remodeling Group. LLC*, 2016 WL 5930876

  (E.D. Pa. Oct. 12, 2016) ..................................................................................................... 10, 12

*Wolfe v. Anchor Drilling Fluids USA Inc.*, 2015 WL 12778393 (S.D. Tex. Dec. 7, 2015) ......... 16

## **Rules**

Federal Rule of Civil Procedure 1 ................................................................................................ 17

Federal Rule of Civil Procedure 23 ................................................................................... 2, 6-7, 12

Now that class notice has issued and the time for class members to submit claims (June 19), and for class members to opt-out and object periods have ended, pursuant to Federal Rule of Civil Procedure 23, Plaintiff Candice Burnett ("Plaintiff" or "Burnett") submits this brief in support of her unopposed motion for final approval of a class action settlement and for a representative service award and attorneys' fees and litigation expenses. After a robust notice plan was implemented by the settlement administrator, no class members out of the over 50,000 class members objected to the settlement, and a mere three class members opted out of the settlement. This tacit approval of the settlement by the class members is not surprising as the settlement achieved a great result for the class members by providing for more per claimant than many other TCPA settlements. Ultimately, each class member who submitted a valid claim will receive an average of over $450.00.

Moreover, the requested attorneys' fees of $652,334.07, litigation expenses of $14,332.60, and a $12,000.00 representative service award are fair and reasonable under Rule 23 and in consideration of the applicable factors.

The elements of Rule 23 remain satisfied and are satisfied at this stage of final approval. The settlement continues to be, as the Court previously held, "adequate, reasonable, and fair to the class." (Doc. 32, p. 2). The requested attorneys' fees and litigation expenses and representative service award are also fair and reasonable. The Court should therefore grant final approval of the settlement.

## I.  STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING.

Plaintiff previously set forth the background of the proceedings in her Motion for Preliminary Approval of Class Settlement. For purposes of brevity, Plaintiff incorporates that background into this brief.

The Court has since entered an order preliminarily approving the parties' settlement. Since the Court entered its Order, the settlement administrator has carried out a robust notice plan directed to members of the settlement classes via mail and/or e-mail. No class members have objected to the terms of the parties' settlement, including the requested representative service award and attorneys' fees and expenses. Only three out of over 50,000 class members have opted out of the settlement.

The Court is now at the stage of determining whether the settlement and the requested fees and expenses and representative service award warrant final approval under Rule 23. As set forth in this brief, the Court should grant final approval of the parties' settlement.

## II.    STATEMENT OF THE ISSUES TO BE RULED UPON BY THE COURT AND STANDARD OF REVIEW

1.    Are the requirements of Federal Rule of Civil Procedure 23 satisfied and remain satisfied to warrant final approval of the Parties' settlement?

2.    Should the Court award the requested representative service award and class counsel's requested attorneys' fees and expenses considering the significant benefit achieved for the class that was the direct result of the extensive efforts of Class Counsel and Plaintiff.

Primary authorities: FED. R. CIV. P. 23; *Reed v. General Motors Corp.*, 703 F.2d 170 (5th Cir. 1983); *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).

Standard of review: The Court's class certification and approval of class settlement decisions are generally reviewed under an abuse of discretion standard on appeal. *See generally O'Sullivan v. Countrywide Home Loans, Inc.*, 319 F.3d 732, 737 (5th Cir. 2003).

## III.    SUMMARY OF THE ARGUMENT

The Court should grant final approval of the settlement. The elements of Rule 23 are and remain readily satisfied.  Moreover, in accordance with Rule 23 and the relevant factors, the Court

should also award Plaintiff's requested representative service award and Class Counsel's requested attorneys' fees and litigation expenses. The exceptional relief afforded to the class members was achieved due to the extensive efforts of Class Counsel. Moreover, Plaintiff and her counsel have dedicated significant time to advancing this case from the time of the filing to the final approval stage.

As the elements of Rule 23 and the relevant factors are and remain satisfied, the settlement now warrants the Court's final approval.

Plaintiff seeks final approval of the parties' class action Settlement Agreement ("Agreement" or "Settlement"). A copy of the Agreement was previously provided to, and preliminarily approved, by the Court. (Doc. 31-1; Doc. 32, *passim*). The Court, finding the requirements of Rule 23 were satisfied, granted preliminary approval of the Settlement. (Doc. 32, p. 2, *passim*).

## IV.    RELEVANT BACKGROUND

### A.    This Lawsuit and the Settlement Negotiations

A detailed background of the lawsuit and the settlement negotiations were detailed in Plaintiff's Motion for Preliminary Approval and the Court's Preliminary Approval Order. (Doc. 31, pp. 1-2, 3-7; 31-2, ¶¶ 12-21). The settlement terms agreed upon were those agreed to after an all-day mediation with the Honorable Jeffrey Kaplan (Ret.). (Doc 31, p. 1). These terms were also only agreed upon after class-wide written discovery and depositions were completed and after Plaintiff moved for class certification. (*See* Doc. 31-2, ¶¶ 12-21).

### B.    Summary of the Settlement Terms

Through the efforts of Judge Jeffrey Kaplan (Ret.) and counsel, the parties agreed on a non-reversionary $2,000,000.00 class settlement fund. (*See* Doc. 31-1, Section 7; Doc. 32, pp. 1-

2). The fund is to be used to pay class members claims, the cost of settlement administration, a representative service award, and class counsel's attorneys' fees and reasonable litigation expenses. (Doc. 31-1, Section 7). Settlement Class members who submitted valid claims will receive a *pro-rata* share of the fund after accounting for the cost of administration, a representative service award, attorneys' fees and litigation expenses. *Id.* Class members with Texas area codes and/or Texas addresses who submitted valid claims will receive an additional 10%. *See id.*

### C. The Court's Preliminary Approval Order

The Court granted Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement on February 29, 2024. (Doc. 32). The Court certified the following classes:

> TCPA Class: The persons to whom calls were placed by or on behalf of CallCore, whose information was obtained from PHBC and the calls were transferred to CallCore.

> Texas Class: The persons with Texas addresses and/or Texas area codes to whom calls were placed by or behalf of CallCore, whose information was obtained from PHBC and the calls were transferred to CallCore.

*Id.* at pp. 2-3.[1]

In preliminarily approving the settlement, the Court found that the settlement class met all the requirements of Rule 23(a) and (b). *Id.* at pp. 3-4. Finally, the Court approved the notice plan proposed by the parties and directed the Administrator to issue notice and create a settlement website, accordingly. *Id.* at pp. 4-5. Ultimately, the Court concluded that the settlement was "fair, reasonable and adequate." *Id.* at p. 2.

---

[1] The class data produced by Defendant identified 67,115 potential class members. Exhibit 1, Declaration of Bryn Bridley, ¶ 5. The Administrator analyzed the data and determined that 16,471 of these persons were duplicated in the data. *Id.* Thus, there are a total of 50,644 unique class members. *Id.*

**D.      Class Notice and Claims Administration**

The Administrator sent CAFA notice on March 8, 2024, and notice to the class members on March 21, 2024. Exhibit 1, Declaration of Bryn Bridley, ¶¶ 4-11 ("Bridley Dec."). The notices were also sent to the class members via e-mail to 42,869 of the class members for whom CallCore had obtained e-mail addresses. *Id.* at ¶ 9. The settlement website, www.prerecordedsettlement.com, was also available for class members to review contemporaneously with the notices being sent. *Id.* at ¶¶ 11-12. The notice to class members included the notice and claim form approved by the Court. *Id.* at ¶ 7, Declaration Exhibit B. In total, 97.56% of the class members received notice via either mail and/or e-mail. *Id.* at ¶ 10.

The notice identified also identified the settlement website from which class members could obtain more information and a QR Code that would take class members directly to the settlement website. *Id.* at ¶ 7, Declaration Exhibit B. The settlement website also includes a digital copy of the notice and claim form and provided class members, if they so wished, an option to electronically opt out of the settlement. *Id.* at ¶ 11. In addition, the settlement website includes a copy of the operative complaint, answers to frequently asked questions, settlement documents (including the complaint. the settlement agreement, the motion for preliminary approval and the preliminary approval order). *See id.* The website also identified critical dates in the case, including the deadline to submit claims, opt-out of the settlement, object to the settlement, and the date of the Final Approval Hearing. *See id.* The settlement website, in addition to the notice, also included the e-mail and phone number for the Administrator so that class members could submit questions and inquiries. *Id.* at ¶¶ 12-14.

Despite nearly 98% of the over 50,000 class members receiving notice, no class members have objected to the settlement and only three class members have excluded themselves from the settlement. *Id.* at ¶ 15.

### E.    Payment to Claimants

As of the date of this filing, which is after the claim deadline, there have been 2,728 valid claims submitted by class members. *Id.* at ¶¶ 16-17. Using the current figures, each class member would receive an average of $450.15, assuming the Court awards the amounts sought by Class Counsel (attorneys' fees of $652,334.07, litigation expenses of $14,332.60, and a $12,000.00 representative service award) and the cost of settlement administration of $93,323.00. *See id.* at ¶ 18 (noting that the cost of administration is $93,323.00). This amount is an average as some class members who are also part of the Texas class will receive an additional ten percent.  Moreover, as the claim period recently ended, the administrator may receive additional claims that were postmarked on or before the claim deadline.

## V.    ARGUMENT

### A.    This Court Should Grant Final Approval of the Settlement.[2]

Courts consider the Rule 23(e) factors when determining whether to grant final approval of a settlement. *See* FED. R. CIV. P. 23(e)(1)-(2). Under Rule 23(e)(2), a court may only approve a settlement based on a finding that the proposed settlement is "fair, reasonable and adequate" after considering whether:

---

[2] For purposes of brevity, Plaintiff incorporates her analysis of the Rule 23 (a) and (b) requirements as set forth in her Motion for Preliminary Approval and as determined by the Court in its Preliminary Approval Order. (*See* Doc. 31, pp. 9-14; Doc. 32, pp. 1-4). There have been no factual changes or issues that have arisen in the case leading to a change in the analysis of any of these factors.  Thus, as the elements of Rule 23(a) and (b) were satisfied at the preliminary approval stage, they remain satisfied at the final approval stage.

(A)     the class representatives and class counsel have adequately represented the class;

(B)     the proposal was negotiated at arm's length;

(C)     the relief provided for the class is adequate, taking into account:
   (i)     the costs, risks, and delay of trial and appeal;
   (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims;
   (iii)   the terms of any proposed award of attorney's fees, including timing of payment; and
   (iv)    any agreement required to be identified under Rule 23(e)(3); and,

(D)     the proposal treats class members equitably relative to each other.

FED. R. CIV. P. 23(e)(2). The factors the Court considers when determining whether the settlement is fair, reasonable, and adequate under Rule 23(e), are:

(1) evidence that the settlement was obtained by fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the stage of the litigation and available discovery; (4) the probability of plaintiffs' prevailing on the merits; (5) the range of possible recovery and certainty of damages; and (6) the opinions of class counsel, class representatives, and absent class members.

*Newby v. Enron Corp.*, 394 F.3d 296, 301 (5th Cir. 2004) (citing *Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983).  These factors are generally referred to as the *Reed* factors.  The *Reed* factors support final approval of the settlement.

### 1.     There is no evidence the settlement was obtained by fraud or collusion.[3]

The settlement achieved was the result of arm's-length and good faith negotiations.  The Parties only achieved a settlement after an all-day mediation with the Honorable Jeffrey Kaplan (Ret.). (*See* Doc. 31-1, Section 7; Doc. 32, pp. 1-2). "Under such circumstances, courts find that

---

[3] Much of the background supporting these factors is also in Plaintiff's preliminary approval motion. For the purposes of brevity, Plaintiff incorporates that background and those arguments into this motion.

class action settlements are free of fraud or collusion." *Quintanilla v. A&R Demolition, Inc.*, 2008 WL 9410399, at *4 (S.D. Tex. May 7, 2008).

> **2.    The settlement achieves an excellent result for the class members considering the complexity of the litigation, continued expense and likely duration of the litigation.**

Risks of protracted litigation and delay favor approval of settlement. *See Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004); *In re Heartland Payment System, Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1064 (S.D. Tex. 2012) ("When the prospect of ongoing litigation threatens to impose high costs of time and money on the parties, the reasonableness of approving a mutually-agreeable settlement is strengthened."). TCPA class actions can be immensely challenging and can result in protracted litigation.  For instance, the case *Krakauer v. Dish Network L.L.C.*, was filed in 2014 and received final approval in 2023. *See Krakauer v. Dish Network, L.L.C.*, 2023 WL 5237091 (M.D.N.C. Aug. 15, 2023). If settlement is denied, years of additional protracted litigation would likely follow. The complexity, expense and potential duration of litigation favor approval of the settlement

> **3.    The settlement was achieved after significant discovery was completed and Plaintiff moved for class certification.**

The litigation and discovery were far progressed at the time a settlement was achieved. Doc. 31-2, ¶¶ 12-21. The settlement was not reached until after the parties completed class-wide written discovery, issued and served third-party subpoenas, exchanged and reviewed voluminous amounts of data, completed depositions, and Plaintiff filed a motion for class certification. Thus, counsel had sufficient information to assess the merits of the claims at the time of settling the case. *See Quintanilla*, 2008 WL 9410399, at *4.

**4.    There was no guarantee Plaintiff would prevail on the merits of her case.**

The probability of the Plaintiff's success on the merits is the most important factor for courts to consider when evaluating a class action settlement. *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982).

Here, while Burnett is confident in the merits of her case, TCPA claims, like Plaintiff's, asserted under theories of vicarious liability are notoriously unpredictable. *See Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 656 (4th Cir. 2019) (affirming jury verdict in favor of class-plaintiffs against Dish Network for TCPA violations under various theories of vicarious liability); *contra Keating v. Peterson's Nelnet, LLC*, 615 Fed. App'x. 365, 374-75 (6th Cir. 2015) (affirming the district court's order of summary judgment in favor of the TCPA defendants, as to the plaintiff's vicarious liability claims).

**5.    Significant relief is being provided to the class particularly considering the uncertainty of damages.**

Even if the Plaintiff prevailed on the merits, there is no guarantee of actual recovery. Here, while defending under a reservation of rights, CallCore's liability insurance carrier agreed to pay the cost of the class settlement. (*See* Doc. 31-1, Section 7). However, in certain declaratory actions, TCPA liability was rendered outside the scope of covered claims for liability insurance *See Nationwide Mut. Ins. Co. v. David Randall Assocs., Inc*., 551 F. App'x 638, 639 (3d Cir. 2014). Accordingly, if approval is denied, even if every contested issue on class certification, summary judgment and and/or trial went in favor of Plaintiff and the classes, as a practical matter, they could wind up empty-handed. The range and certainty of actual recovery favor approval of the class settlement.

The settlement provides significant relief to members of the Settlement Class, especially compared to other TCPA cases. Settlement Class members who submitted valid claim forms will receive an average of approximately $450.81. This amount is significantly greater than other approved TCPA class settlements. *See, e.g,. Bowman v. Art Van Furniture, Inc*., 2018 WL 6444514, at *2, 5 (E.D. Mich. Dec. 10, 2018) (approximately $99 per claimant); *Boger v. Citrix Sys., Inc*., 2023 WL 3763974, at *11 (D. Md. June 1, 2023) ("the expected settlement payment for each Class Member is $44.14, which exceeds the typical value of claims in similar settlements and the likely statutory damages for TCPA claims"); *In re Capital One Tel. Consumer Prot. Act Litig*., 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) (recovery of $34.60 per claimant "falls within the range of recoveries in other TCPA actions"); *Markos v. Wells Fargo Bank, N.A.*, 2017 WL 416425, at *4 (N.D. Ga. Jan. 30, 2017) (recovery of $24 per claimant "an excellent result when compared to the issues Plaintiffs would face if they had to litigate the matter"); *Vasco v. Power Home Remodeling Group LLC*, 2016 WL 5930876, at *8 (E.D. Pa. Oct. 12, 2016) (approximately $27.00 per claimant). In short, the significant relief afforded here continues to warrant final approval of the settlement.

> **6.    Class counsel, the class representative, and the absent class members, all believe the Court should grant final approval of the settlement.**

A "lack of objection from the class members supports the adequacy of the settlement." *Celeste v. Intrusion, Inc.*, 2022 WL 17736350, at *11 (E.D. Tex. Dec. 16, 2022). Here, the members have reacted favorably to the class. Despite over 97% of the 50,000-plus class members receiving notice (most of whom receive notices in two forms – mail and e-mail), zero class members have objected to the settlement. Ex. 1, Bridley Dec., ¶¶ 10, 15. Indeed, a lack of objection "indicates that the Settlement is fair, reasonable and adequate." *Strano v. Kiplinger Washington*

*Editors, Inc.*, 2023 WL 6628013, at * 2 (E.D. Mich. Oct. 11, 2023) (internal quotation and citation omitted).

The minimal number of class members who opted out of the settlement also establishes this factor. "A certain number of opt-outs and objections are expected in a class action." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 527 (E.D. Mich. 2003) (internal citation omitted). As such, this factor is readily satisfied where "less than 1%" of class members opt out of a settlement. *See id.* Here, only three people, or approximately six thousandths of one percent of class members have opted out of the settlement. *See* Ex. 1, Bridley Dec., ¶¶ 5-9, 15. Thus, this also establishes the absent class members approval of the settlement.

Notably, this positive reaction is not surprising because the Agreement affords significant relief to the class.

### 7.    Notice to the class was thorough and satisfies due process.

At final approval, the Court must also determine whether the notice to the class members satisfies due process. *See generally Eisen v. Carlisle & Jacquilin*, 417 U.S. 156, 173-74 (1974) (holding that providing proper notice serves to satisfy the due process rights of absent class members); *In re Flint Water Cases*, 571 F. Supp. 3d 746, 785 (E.D. Mich. 2021). Due process is satisfied where the notice reasonably apprises the absent class members of their rights and affords them an opportunity "to present their objections." *In re Flint Water Cases,* 571 F. Supp. 3d at 785.

The Court found at preliminary approval that the notice plan was "fair, reasonable and adequate." (Doc. 32, pp. 2, 4-6).  The results of the notice further establish this remains true for at least three additional reasons.

First, the class notice was received by most class members in two forms – mail and e-mail. Ex. 1, Bridley Dec., ¶¶ 5-10. Ultimately, the class reached nearly 98% of the Class Members either

by mail or e-mail. *Id.* at ¶ 10. A notice like the one here satisfies due process where it reaches such a high percentage of class members. *See generally in re Flint Water Cases*, 571 F. Supp. 3d at 786 (notice reached over 95% of class members).

Second, the thorough nature of the class notice is reflected in a claims rate that was higher than many TCPA settlements. *See* Ex. 1, Bridley Dec., ¶¶ 5, 16-17 (2,728 claims submitted out of 50,644 unique class members). *See Rogers v. Lumina Solar, Inc.*, 2020 WL 3402360, at *10 (D.D.C. June 19, 2020) (1.25% claim rate); *Bowman v. Art Van Furniture, Inc.*, 2018 WL 6445389, at *6 (E.D. Mich. Dec. 10, 2018) (2.9% claim rate); *Lee v. Glob. Tel*Link Corp.*, 2018 WL 4625677, at *7 (C.D. Cal. Sep. 24, 2018) (1.8% claim rate); *Vasco v. Power Home Remodeling Grp. LLC*, 2016 WL 5930876, at *2 (E.D. Pa. Oct. 12, 2016) (9% claim rate); *Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1044 (S.D. Cal. 2015) (7.7% claim rate).

Third, the process for class members to submit claims was not burdensome. Rule 23(e)(2)(C)(ii) considers "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." FED. R. CIV. P. 23(e)(2)(C)(ii). This factor is particularly concerned with "methods of processing claims so complex that they discourage class members from pursuing valid claims." *T.K. Through Leshore v. Bytedance Tech. Co.*, 2022 WL 888943, at *14 (N.D. Ill. Mar. 25, 2022). Here, the claims process was straightforward. A class member simply needed to sign their name, and confirm their name, address and phone number on which they received the calls. *See* Ex. 1, Bridley Dec., ¶ 11, Declaration Exhibit D. Moreover, the claim form was able to be submitted via mail or through electronic means. *Id.* at ¶¶ 11, 16. A request that a claimant submit a claim form that requires "claimants provide their names, addresses, and signature" does not raise concerns with the claims process. *T.K. Through Leshore*, 2022 WL 888943, at *14 (internal quotation and citation omitted).

12

In short, the settlement warrants final approval because the settlement is fair, reasonable, and adequate under Rule 23 and in consideration of the *Reed* factors.

**B.      This Court Should Approve Class Counsel's Requested Attorneys' Fees and Litigation Expenses and the Requested Representative Service Award for Plaintiff.**

Class Counsel also requests attorneys' fees of $652,334.07 and litigation expenses of $14,332.60 and Plaintiff seeks a representative service award of $12,000.00. The fees and expenses are a total of 33 1/3% of the total non-reversionary settlement fund (the fees requested are $652,334.07 or 32.6% of the total non-reversionary settlement fund). For the reasons discussed below, these amounts fees are fair and reasonable and should be approved by the Court.

**1.      The Percentage-of-Recovery Method is Proper in This Common Fund Case.**

The Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). Using "[t]he percentage of the fund method has a number of advantages; it is easy to calculate; it establishes reasonable expectations on the part of plaintiffs' attorneys as to their expected recovery; and it encourages early settlement, which avoids protracted litigation." *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993). While the Court can use a percentage-of-recovery or lodestar methodology, the percentage methodology is "often the preferred method for calculating reasonable attorney's fees in common fund cases, because it aligns the interests between class counsel and the class members, encouraging successes and penalizing failure." *Celeste v. Intrusion, Inc.*, 2022 WL 17736350, at *10 (E.D. Tex. Dec. 16, 2022) (quoting *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 643 (5th Cir. 2012)).

While the percentage-of-recovery methodology is appropriate here, the fairness and

reasonableness of the requested attorneys' fees must still be analyzed under the *Johnson* factors.

**2.    The *Johnson* Factors Establish the Fairness and Reasonableness of the Requested Attorneys' Fees.**

In determining the fairness and reasonableness of Class Counsel's requested fees, the Court considers what are commonly referred to as the *Johnson* factors. These factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and, (12) awards in similar cases. *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). The relevance of each factor varies in each case, and the factors need not be rigidly applied. *Schwartz v. TXU Corp.*, 2005 WL 3148350, at *28 (N.D. Tex. Nov. 8, 2005). Rather, it is within the Court's discretion to apply these factors in consideration of the case before the Court. *Id.*

Ultimately, the *Johnson* factors support an award of the attorneys' fees requested.

**a.    The Time and Labor Factor**

Federal Rule 1 mandates that counsel adjudicate cases in a "just, speedy, and inexpensive" manner. FED. R. CIV. P. 1. Thus, it makes sense that the "time and labor factor turns on more than the number of hours worked." *Celeste v. Intrusion, Inc.*, 2022 WL 17736350, at *11 (E.D. Tex. Dec. 16, 2022). This is because, "in common fund class action cases" even an early settlement "signals counsel's efficiency and effectiveness compared to similar cases that could have unnecessarily dragged on for years." *Id.* (quoting *Schwartz*, 2005 WL 3148350, at *29). As such, "overemphasizing the hours worked" can "penalize counsel" and "distort the value of the

14

attorney's services." *See id.* (internal quotation and citation omitted). Overemphasizing the hours worked on a case, rather than emphasizing the value of those hours in moving the case toward a successful resolution, can be contrary to Rule 1, as doing so can "encourage[] delay, inefficiency, and recalcitrance towards early settlement." *Schwartz*, 2005 WL 3148350, at *29.

Here, Class Counsel not only extensively litigated this case, but did so in an efficient manner. Among other things, Class Counsel thoroughly investigated the claims, propounded and completed written discovery, responded to written discovery, served third party subpoenas, completed and prepared for party depositions, conducted multiple discovery conference calls with opposing counsel, reviewed voluminous discovery records, filed an extensive motion for class certification, prepared for mediation, completed an all-day mediation, drafted and finalized the settlement agreement, developed a notice plan with opposing counsel and the settlement administrator, drafted preliminary approval papers, stayed in contact with the settlement administrator about the settlement, and communicated with class members about the settlement. Exhibit 2, Declaration of Christopher E. Roberts, ¶ 10 ("Roberts Dec."); Exhibit 3, Declaration of Jacob U. Ginsburg, ¶ 30 ("Ginsburg Dec."). Class Counsel was able to advance the case and achieve the significant results afforded by this settlement in an efficient amount of time of over 525 hours.[4] *See* Ex. 2, Roberts Dec. ¶ 10; Ex. 3, Ginsburg Dec., ¶ 30. The "time and labor" factor supports approval of the requested attorneys' fees.

---

[4] Moreover, the total amount of billed time by counsel results in a lodestar multiplier of less than 3. Ex. 2, Roberts Dec., ¶ 10; Ex. 3, Ginsburg Dec., ¶ 30. This is well within the range of reasonableness. *See generally Di Giacomo v. Plains All Am. Pipeline*, 2001 WL 34633373, at *11 (S.D. Tex. Dec. 19, 2001) (applying the percentage methodology with a lodestar crosscheck and finding a 5.3 multiplier acceptable).

**b.    The Novelty and Difficulty of the Issues**

The novelty and the difficulty of the issues also favors final approval. As discussed above, Plaintiff's success on the merits was not guaranteed. In addition to complex issues that can be presented by the TCPA in general, this case presented difficult issues concerning CallCore's vicarious liability for the calls at issue. *See Braver v. Northstar Alarm Servs., LLC*, 2020 WL 6468227, at *2 (W.D. Okla. Nov. 3, 2020) (granting attorneys' fees of 33% in a TCPA case and noting that the case presented difficult issues concerning vicarious liability).

**c.    The Skill Required to Properly Perform the Legal Services**

Class Counsel's skill in achieving a commendable settlement also favors final approval. This factor favors approval where counsel achieve good result "diligently and skillfully." *Schwartz*, 2005 WL 3148350, at *30. Class Counsel have diligently and skillfully litigated this case in an effective and efficient manner, which has resulted in significant relief to the class.

**d.    The Preclusion of Other Employment**

The time spent by Class Counsel was at the expense of time they could have dedicated to other matters.  For example, Mr. Roberts is one of two attorneys at his firm and Mr. Ginsburg is the primary attorney at his firm who handles TCPA matters. This factors therefore favors an award of the requested fees.

**e.    The Customary Fee**

The requested attorneys' fees are in the range of fees normally awarded in other TCPA class actions and in settlements within the Fifth Circuit. *See Wolfe v. Anchor Drilling Fluids USA Inc.*, 2015 WL 12778393, *3 (S.D. Tex. Dec. 7, 2015) (awarding 40% of the common fund as attorneys' fees); *Frost v. Oil States Energy Servs., L.L.C.*, 2015 WL 12780763, *2 (S.D. Tex. Nov. 19, 2015) (one-third of common fund as attorneys' fees); *Kolinek v. Walgreen Co.*, 311 F.R.D.

16

483, 503 (N.D. Ill. 2015) (36% of fund in TCPA class settlement); *Boger v. Citrix Sys., Inc.*, 2023 WL 3763974, at *12 (D. Md. June 1, 2023) (33% of fund in TCPA class settlement). This factor therefore also favors approval.

### f.    Whether the Fee is Fixed or Contingent

Class Counsel took this case on a contingency fee basis and assumed the risk that they would not recover anything, and therefore not be paid for their work on the case. The risk of "receiving little to no recovery is a major factor in considering an award of attorneys' fees." *Schwartz*, 2005 WL, 3148350, at *31. This factor favors final approval of the settlement.

### g.    Time Limitations Imposed by the Client or Other Circumstances

This factor does not apply in this case.

### h.    The Amount Involved and the Results Achieved

The relief afforded to the class members is significant and warrants approval of the settlement. Each class member who submitted a claim is expected to receive an average of approximately $450.00. Such a result supports approval of the requested fees. *See Braver*, 2020 WL 6468227, at *3 (granting attorneys' fees of 33% in a TCPA case and noting the relief was significant where each claimant would receive between $35 and $75).

### i.    The Experience, Reputation and Ability of the Attorneys

As discussed above, and in counsel's preliminary approval papers, Class Counsel have significant experience in class action litigation and TCPA litigation. (Doc. 31-2, ¶¶ 4-10). Class Counsel's efforts in achieving a significant result for the class in an incredibly efficient manner is the "best indicator" of their "experience and ability." *Schwartz*, 2005 WL, 3148350, at *33. The significant results achieved by Class Counsel confirms this factor is satisfied.

17

**j.      The Undesirability of the Case**

The desirability of this case, or lack thereof, also favors approval. Counsel pursued this uncertain case on a contingency basis. Ex. 2, Roberts Dec., ¶¶ 5-6. Moreover, counsel pursued the case as a class action without a guarantee of being compensated for their efforts. *Id.* This factor therefore supports the requested fees.

**k.      The Nature and Length of Relationship With the Client**

This factor does not meaningfully apply in this case.

**l.      Awards in Similar Cases**

As discussed above, the requested attorneys' fees are consistent with fee awards in other TCPA cases.

In short, consistent with Rule 23 and the *Johnson* factors, Class Counsel's requested attorneys' fees are fair and reasonable. In addition, counsel have incurred $14,332.60 in expenses in litigating this case. *Id.* at ¶¶ 7-9. These expenses were necessary to effectively litigate this case and are fair and reasonable. *Id.* at ¶ 7. Moreover, there have been no objections to the requested attorneys' fees. The Court should therefore award Class Counsel attorneys' fees of $652,334.07, and litigation expenses of $14,332.60. This amount is fair and reasonable.

**3.      The Requested Representative Service Award Should be Approved.**

Plaintiff also requests $12,000 as a representative service award for her service as the Representative Plaintiff in this case. Plaintiff has dedicated significant time to helping achieve a commendable result for the class. Ex. 2, Roberts Dec., ¶¶ 13-14; Ex. 3, Ginsburg Dec., ¶¶ 26-27, 37; Exhibit 4, Declaration of Candice Burnett, ¶¶ 16-29 ("Burnett Dec."). Ms. Burnett has met with her counsel on numerous occasions, stayed actively involved in the case, responded to written discovery, produced records, had her employer served with a subpoena, sat for her deposition and

attended and participated in mediation. *See* Ex. 2, Roberts Dec., ¶¶ 13-14; Ex. 3, Ginsburg Dec., ¶¶ 26-27, 37; Exhibit 4, Burnett Dec., ¶¶ 16-29. This requested service award comports with awards provided other TCPA class actions. *See generally Charvat v. Valente*, 2019 WL 5576932, at *10 (N.D. Ill. Oct. 28, 2019) (granting $25,000 service award). The Court finds the requested representative service award to Ms. Burnett for $12,000 to be fair and reasonable.

## VI.    CONCLUSION

For the reasons set forth above, the Court should therefore grant Plaintiff's motion and grant final approval of the settlement, including the requested attorneys' fees and litigation expenses and a representative service award.  The settlement is fair, reasonable and adequate, and achieved a fantastic result for class members. The settlement and requested fees, expenses and representative service award satisfy the requirements of Rule 23 and the *Reed* and *Johnson* factors. Ultimately, this Court should grant final approval of a settlement in which each class member will receive an average of $450 and to which no class member objected to the settlement.

Plaintiff therefore respectfully requests the Court: (1) grant final approval of the settlement and find that the requirements of Rule 23 remain satisfied for settlement purposes, and confirm certification of the settlement classes; (2) enter final judgment in favor of Plaintiff and the settlement class consistent with the terms of the Agreement; (3) order the Administrator to distribute the fund in accordance with the terms of the Settlement; (4) award Class Counsel attorneys' fees of $652,334.07 and litigation expenses of $14,332.60 (for a total of $666,666.67 as set forth in the class notice); and (5) award Plaintiff a representative service award of $12,000.00.

*/s/ Christopher E. Roberts*
Christopher E. Roberts (SDTX #3708019)
Butsch Roberts & Associates LLC
7777 Bonhomme Avenue, Suite 1300
Clayton, Missouri 63105
Phone: (314) 863-5700
Fax: (314) 863-5711
E-mail: croberts@butschroberts.com

*/s/ Jacob U. Ginsburg*
Jacob U. Ginsburg (SDTX# 3568914)
Kimmel & Silverman, P.C.
30 East Butler Ave.
Ambler, Pennsylvania 19002
Phone: (267) 468-5374
Facsimile: (877) 788-2864
Email: jginsburg@creditlaw.com
teamkimmel@creditlaw.com

Counsel for Plaintiff

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 21, 2024, a copy of the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all counsel of record.

*/s/ Christopher E. Roberts*